**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY, *an indirect subsidiary of Encova Mutual Insurance Group, Inc.*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:25-cv-07660-DCN |
| vs. | ) ) | **ORDER** |
| KIMBERLY MITCHELL, *individually and as legal guardian/next of kin of AM, a minor*, JAYLIN MITCHELL, EDD, LLC, LEMUEL XAVIER RODRIGUEZ, and PROGRESSIVE DIRECT INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants Kimberly Mitchell's ("K. Mitchell")

and Jaylin Mitchell's ("J. Mitchell") (together, the "Mitchells") motions to dismiss, ECF

Nos. 13, 14, 16.  For the reasons set forth below, the court declines to exercise

jurisdiction over this matter and dismisses it without prejudice.

## I.  BACKGROUND

This declaratory judgment action arises from a dispute over insurance coverage

relating to an automobile accident that occurred on April 16, 2022.  ECF No. 1, Compl.

¶ 10.  At 4:00 A.M. that morning, defendant Lemuel Rodriguez ("Rodriguez") was

driving a vehicle owned by his then-employer, defendant EDD, LLC ("EDD"), in North

Charleston, South Carolina.  Id. ¶¶ 10–11.  Rodriguez's vehicle struck another vehicle

1

occupied J. Mitchell and his minor family member.[1]  Id. ¶¶ 5–6, 10.  Rodriguez was purportedly intoxicated at the time accident.  Id. ¶ 11.

Subsequently, the Mitchells brought a negligence action (the "underlying action") against Rodriguez and EDD in the Charleston County Court of Common Pleas on April 29, 2022.  ECF No. 1-1, K. Mitchell, Individually and as Legal Guardian/Next of Kin of JMM, A Minor, AM, A Minor v. Rodriguez et al., 2022-CP-10-01998 (Charleston Cnty. Ct. C.P. Apr. 29, 2022).  A verdict was rendered in the underlying action on October 21, 2025.  ECF Nos. 13-4 at 6, 18 at 2.  The jury found no liability on EDD's part; Rodriguez was determined to be liable, and the jury awarded the Mitchells $497,860.99 in damages.  ECF Nos. 13-4 at 6, 18 at 2.

Plaintiff Motorists Commercial Mutual Insurance Company ("Motorists") issued a commercial automobile policy (the "Policy") to EDD covering the vehicle involved in the accident. Compl. ¶ 19.  Motorists filed this declaratory judgment action on July 17, 2025, seeking declarations that Rodriguez is not an insured under the Policy because Rodriguez did not have EDD's express or implied consent to operate the vehicle, and that Motorists therefore has no duty to indemnify or defend Rodriguez in connection with the accident.  Id. ¶¶ 29, 33, 36.  Motorists claims that Rodriguez was acting outside the scope EDD's consent because he was intoxicated while operating the vehicle at 4:00 A.M.  See id. ¶ 29.

Motorists further alleges that defendant Progressive Direct Insurance Company ("Progressive") insured the Mitchells at the time of the accident.  Id. ¶ 38.  Motorists

_____

[1] K. Mitchell is named as a defendant in this suit in her capacity as the minor family member's legal guardian.  Compl. ¶ 5.

seeks an additional declaration requiring Progressive to provide the Mitchells with "the applicable minimum insurance required for an accident involving an uninsured motorist pursuant to [the Mitchells'] policy and South Carolina law."  Id. ¶ 40.

On November 14, 2025, J. Mitchell moved to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 13-4 at 6.  Alternatively, J. Mitchell asks the court, pursuant to the discretion afforded under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq., to decline to exercise jurisdiction over this suit.  Id.  K. Mitchell filed her own Rule 12(b)(6) motion to dismiss on November 14, 2025, ECF No. 14, and also joined in J. Mitchell's motion to dismiss on that same day, ECF No. 16.  Motorists responded in opposition to both motions on November 24, 2025.  ECF No. 18. J. Mitchell and K. Mitchell did not file replies.  The court held a hearing on the instant motions on January 15, 2026.  ECF No. 26.  As such, the motions are fully briefed and now ripe for the court's review.

## II.  STANDARD

The DJA states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). In the context of declaratory judgment actions, the Supreme Court concluded in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494–95 (1942), and later in Wilton, 515 U.S. at 288, that a district court's substantial discretion

3

permits it to stay or dismiss an action seeking a declaratory judgment in favor of an ongoing court case.[2]  Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason."  Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks omitted) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)), overruled in part on other grounds by Centennial Life Ins. Co. v. Poston, 88 F.3d 255 (4th Cir. 1996).

When an insurer comes to federal court seeking declaratory relief on coverage issues while the underlying tort action is pending in state court, the court's exercise of its discretion to hear the action should be guided by "federalism, efficiency, and comity."  Nautilus, 15 F.3d at 376.  Courts often look to four factors in deciding whether to hear a declaratory action in this context:

> (i)    the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (ii)   whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ]
>
> (iii)  whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; . . . [and]
>
> (iv)   whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race

---

[2] District courts in this circuit have characterized the court's exercise of discretion pursuant to Wilton and Brillhart as falling under the broader rubric of "abstention" doctrine.  See, e.g., U.S. Liability Ins. Co. v. Krawtasky, 2022 WL 888885, at *9 & n.5 (D. Md. Mar. 25, 2022); Nautilus Ins. Co. v. 200 West Cherry Street, LLC, 383 F. Supp. 3d 494, 505 (D. Md. 2019).  In determining whether abstention is proper, courts often state the inquiry in terms of "declin[ing] jurisdiction."  See e.g., 200 West Cherry Street, LLC, 383 F. Supp. 3d at 505 (quoting Myles Lumber Co. v. CAN Fin. Corp., 233 F.3d 821, 823 (4th Cir. 2000)).  Accordingly, the court uses the terms "abstain" and "declines jurisdiction" interchangeably.  See U.S. Liability Ins. Co., 2022 WL 888885, at *9 n.5.

for res judicata or to achieve a federal hearing in a case otherwise not removable.

Id. at 377 (cleaned up). The Fourth Circuit instructs that these factors should not be treated "as a mechanical checklist[ ]" but should be applied "flexibly in light of the particular circumstances of each case." VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013) (internal quotation marks omitted).

## III. DISCUSSION

The Mitchells argue that the court should exercise its discretion under the DJA and abstain from hearing this declaratory action. ECF No. 13-4 at 5; see also ECF No. 16. After considering each of the four Nautilus factors, the court agrees. The court analyzes each factor in turn.

### A. Strength of State Interest in Deciding Issues Raised in this Suit

The court first addresses the Mitchells' argument that abstention "avoid[s] federal-state friction" because they intend to pursue a claim against Motorists pursuant to S.C. Code Ann. § 38-77-142(A). Id. at 6. They characterize this statute as the "dedicated vehicle" for "direct action . . . post-judgment disputes between judgment creditors and insurers." Id. Next, the court addresses the interest that South Carolina courts have in deciding the insurance coverage issues presented in this suit. Id. The court then assesses whether South Carolina courts have a strong interest in deciding whether this declaratory action is time-barred pursuant to S.C. Code Ann. § 15-3-530(8).

Concerning the Mitchells' yet-to be filed "direct action," Motorists submits that Section 142(A) creates no such action between judgment creditors and insurers. ECF No.

18 at 8–9. The court agrees. The statute merely provides that insurance policies on motor vehicles "principally garaged, docked, or used in this State" must insure

> the named insured and any other person using or responsible for the use of the motor vehicle with the express or implied consent of the named insured against liability for death or injury . . . or damage incurred . . . as a result of negligence in the operation of or use of the vehicle by the named insured or by any such person.

S.C. Code Ann. § 38-77-142(A). Interpreting the "plain wording" of the statute, the South Carolina Supreme Court has determined that Sections 142(A) and (B) simply require an automobile insurance policy "to contain a provision insuring the named insureds and permissive users against liability for damage incurred 'within the coverage of the policy.'" Williams v. Gov't Emp.s Ins. Co. (GEICO), 762 S.E.2d 705, 714 (S.C. 2014) (quoting S.C. Code Ann. § 38-77-142(B)). Therefore, Section 142(A) creates no private right of action between an injured party and the at-fault party's insurer. It goes without saying that no court, state or federal, has an interest in adjudicating a non-existent cause of action.

Having dispensed with the notion that Section 142(A) creates a private right of action, the court now turns to the primary consideration under the first Nautilus factor: the interest that South Carolina courts have in adjudicating the coverage issues presented here. 15 F.3d at 377. The central issue in this suit is whether Rodriguez was operating the vehicle within the scope of EDD's express or implied consent at the time of the accident. See Compl. ¶¶ 26–29. The Mitchells argue that South Carolina courts have a strong interest in deciding state insurance law questions, ECF No. 13-4 at 6, while Motorists reasons that South Carolina courts have "no compelling state interest" in

deciding the coverage issues presented here because a verdict has already been rendered in the underlying action, ECF No. 18 at 8.

Motorists' argument is unavailing for two reasons.  First, this consideration asks whether South Carolina courts have a strong interest in deciding "the issues raised in the federal declaratory action[,]" i.e., the coverage issues raised in this suit.  See Nautilus, 15 F.3d at 377.  Actions for declaratory relief to resolve coverage issues under an insurance policy often arise from an underlying tort action that does not adjudicate any issues relating to insurance coverage.  See, e.g., Monticello Ins. Co. v. Baecher, 857 F. Supp. 1145, 1146–47 (E.D. Va. 1994); Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 964–65 (4th Cir. 1994).  Thus, the court still considers the state court's interest in deciding the coverage issues presented here even if those issues are not currently pending before the state court in the underlying action.

Second, Motorists is incorrect to assert that "there is no pending state court action" because litigation is still necessary in state court as the Mitchells seek to satisfy their judgment against Rodriguez.  See ECF No. 18 at 7.  At the hearing on these motions, counsel for J. Mitchell represented that Rodriguez is likely a "judgment proof" defendant who will not appear in any proceedings before this court.  See ECF No. 26. The most recent filing in the state court action is the return of a nulla bona indicating that Rodriguez maintains no assets in Charleston County that could be levied upon in order to satisfy the judgment against him.  See id.  However, the Mitchells believe that Rodriguez could maintain assets outside of Charleston County, and they will attempt to collect on their judgment using those assets if they exist.  See id.  To that end, J. Mitchell's counsel intends to seek the appointment of a receiver by the state court to collect and administer

any such assets.  See id.  Under South Carolina law, the process of appointing a receiver typically begins only after a judgment has been rendered against the defendant.  Welch v. Advance Auto Parts, Inc., 916 S.E.2d 320, 330 (S.C. 2025) ( "A receiver may only be appointed before judgment in the rarest of cases[.]").  Therefore, litigation in state court is still a going concern notwithstanding the return of a verdict against Rodriguez.

That said, the court must still determine whether South Carolina courts have a strong interest in deciding the primary coverage issue presented here—i.e., whether Rodriguez was acting outside the scope of EDD's consent and is, thus, not an insured under the Policy.  Deciding this issue requires nothing more than "the routine application of settled principles of law[.]"  See Nautilus, 15 F.3d at 378; see also Rakestraw v. Allstate Ins. Co., 119 S.E.2d 746, 749 (S.C. 1961) (holding that driver of automobile "becomes additional insured under the omnibus clause" when permission is "expressly or impliedly given for that use."); Crenshaw v. Harleysville Mut. Cas. Co., 144 S.E.2d 810, 811 (S.C. 1965) ("Permission to use a covered vehicle for a particular purpose does not imply permission to use it for all purposes.").  However, the court also notes the absence of any "strong countervailing federal interest[ ]" in deciding this issue, meaning "the only federal interest at issue in this case is the same interest federal courts have in deciding any diversity case."  See Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992).  As such, neither this court nor South Carolina courts have a particularly strong interest in deciding a routine insurance coverage dispute.

However, South Carolina courts have a stronger interest than this court in adjudicating this suit because of the statute of limitations argument raised in K. Mitchell's motion to dismiss.  See ECF No. 14-1 at 4–6.  In her motion, K. Mitchell

8

argues the court should dismiss this declaratory action as time-barred pursuant to S.C. Code Ann. § 15-3-530(8).  See id.  The statute places a three-year limitations period on "actions on any policy of insurance, either fire or life[ ] . . . ."  S.C. Code Ann. § 15-3-530(8) (emphasis added).  Despite the statute's apparent inapplicability to an action arising from an automobile insurance policy, Motorists failed to address the statute of limitations argument in its response brief.  See ECF No. 18.

In addition to the statute's apparent inapplicability, the court notes that insurers "have the right and ability to contest coverage" after the return of a verdict "in a subsequent declaratory judgment action[ ]" under South Carolina law.  Ex Parte Builders Mut. Ins. Co., 847 S.E.2d 87, 96 (S.C. 2020).  The court is therefore hesitant to conclude that Section 530(8) operates as a categorical bar to exercising this right when the underlying tort action is not resolved within three years.  Cf. Netherlands Ins. Co. v. Cockman, 342 F. Supp. 2d 396, 402 (M.D.N.C. 2004) (declining to exercise jurisdiction over federal declaratory action brought by insurer because a state statute of limitations issue placed a party in a "Catch 22 scenario" where party's right to file the claim may have expired before the claim ever accrued pursuant to state law).   At the same time, Motorists has failed to address the issue, and the court is equally as hesitant to "fashion arguments for another party[.]"  See Clayton v. Nationwide Mut. Ins. Co., 260 F. Supp. 3d 514, 521 (D.S.C. 2017) (granting summary judgment when plaintiff offered "no explanation" and "no legal authority" for an underdeveloped opposition argument).  When confronted with a novel application of state law and an opposing party's failure to address the issue, the court finds that the question is best left to a state court for resolution.  See Mitcheson, 955 F.2d at 238 ("Absent a strong countervailing federal

9

interest," a federal court should not "elbow its way into" a controversy "to render an 'uncertain and ephemeral' interpretation of state law." (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 122 n.32 (1984))); see also Nautilus, 15 F.3d at 377 (noting that state courts have a strong interest in deciding "problematic" issues of state law even when the federal declaratory action has "obvious utility to the parties[.]").

### B. Efficiency

The next factor for the court to consider is whether "the issues raised in the federal action can be more efficiently be resolved in the court in which the state action is pending[.]" Nautilus, 15 F.3d at 377. In doing so, the court is cautious to avoid "charg[ing] headlong into the middle of a controversy already the subject of state court litigation" because it risks "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation." Mitcheson, 955 F.2d at 239 (alterations in original) (quoting Brillhart, 316 U.S. at 495).

The Mitchells argue that that the state court, having tried the underlying action to a verdict, is in a better position to efficiently resolve the coverage issues presented in this declaratory action. ECF No. 13-4 at 7. The Mitchells also persist in their position that a "single direct-action proceeding" pursuant to Section 142(A) "will efficiently resolve . . . coverage questions under South Carolina law." Id.

Despite denying that Section 142(A) creates a cause of action, Motorists' arguments concerning efficiency center on the hypothetical inefficiencies of a Section 142(A) direct action. ECF No. 18 at 8–10. It contends, for example, that a direct action does not replace the need for this declaratory action because neither Progressive nor EDD would be a party to such an action. Id. at 9. Motorists further asserts that the court's

10

failure to exercise jurisdiction would result in inefficiency because two separate actions would have to be filed in state court: "(1) an action against [Motorists] under S.C. Code Ann. § 38-77-142 and (2) another action filed against Progressive to determine the extent of the uninsured motorists coverage." ECF No. 18 at 10.  Motorists characterizes these "two separate and competing state court actions" as running counter to judicial economy. Id.  However, arguments as to the inefficiencies of a non-existent cause of action are of little concern to the court.

The relevant inquiry is simply whether the state court can more efficiently resolve this declaratory action.  See Nautilus, 15 F.3d at 377 (stating the relevant inquiry as "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending[.]") (emphasis added).  Consequently, Motorists observation that EDD and Progressive would not be parties to a hypothetical (and, indeed, non-existent) Section 142(A) direct action misses the mark because there is little question that Progressive and EDD could be named as a parties to this action if brought in state court.  Of course, the mere fact that the issues raised here could be resolved in a yet-to be filed declaratory action in state court is not, by itself, sufficient reason to dismiss this action.  See Nautilus, 15 F.3d at 379.

Here, however, the court is satisfied that the state court can resolve this declaratory action more efficiently than a federal court because the Mitchells intend to seek the appointment of a receiver over Rodriguez's assets by the state court.  See ECF No. 26.  Certainly, the state court—as the forum where judgment was rendered—is better suited to preside over the appointment of a receiver than a federal court, especially when state law will govern the appointment of a receiver.  See S.C. Code Ann. § 15-60-10.

Both the appointment of a receiver and the resolution of coverage issues under the Policy will impact how the Mitchells might obtain satisfaction of their judgment. It would therefore be more efficient for one court to adjudicate these interrelated questions in a logical order—as opposed to this court adjudicating coverage questions while the state court simultaneously determines whether to appoint a receiver. The state court is also better acquainted with the record in the underlying action, which will enable it to more efficiently decide whether the circumstances of the accident triggered coverage under the Policy. Finally, the court notes that no counsel has entered an appearance on Rodriguez's behalf in this suit while Motorists has provided Rodriguez with defense counsel in the underlying action before the state court. Consequently, the state court will be better positioned to take any necessary action to protect the interests of Rodriguez in deciding coverage issues. For these reasons, the court finds that efficiency favors litigating this declaratory action in state court.

### C. Entanglement

Next, the court considers whether permitting this action "to go forward would result in unnecessary entanglement between the federal and state court systems[ ] because of the presence of overlapping issues of fact or law." Nautilus, 15 F.3d at 377. The Fourth Circuit has cautioned that in a declaratory judgment "brought to resolve a duty to defend or indemnify an insured in a controversy already the subject of state court litigation" there is a risk that issues decided by the federal court could result in the insured being "collaterally estopped from relitigating the overlapping issues decided in the federal action." Mitcheson, 955 F.2d at 239 (citation omitted). Such an occurrence can "frustrate the orderly progress of state court proceedings by leaving the state court

12

with some parts of a case foreclosed from further examination but still other parts in need of full-scale resolution." Id. (internal quotation marks and citation omitted).

The court finds that this consideration favors declining to exercise jurisdiction because the appointment of a receiver to collect any of Rodriguez's assets would create overlapping legal issues with coverage proceedings in this court. At the hearing on these motions, counsel for J. Mitchell provided the court with a recent South Carolina Supreme Court opinion where that Court determined that a defendant's contingent insurance assets were validly placed in a receivership. See Welch, 916 S.E.2d at 666. Counsel stated that the Mitchells intend to utilize the precedent set in Welch to place Rodriguez's contingent insurance assets (i.e., potential proceeds under the Policy) in a receivership in addition to using the procedure to levy upon Rodriguez's non-contingent assets, if any. See ECF No. 26. A ruling from this court as to whether Rodriguez was operating the vehicle with permission might frustrate or confuse proceedings seeking to place his contingent assets in a receivership. The potential for confusion is only heightened by the fact that this is a developing area of state law.[3] As such, the state court should have the benefit of conducting receivership proceedings and related coverage proceedings in an efficient and prompt manner without risking inconsistent rulings from this court.

### D. Procedural Fencing

Finally, the court considers whether this suit is being used as a device for "procedural fencing—that is, to provide another forum in a race for res judicata or to

---

[3] Although the Supreme Court in Welch sanctioned placing contingent insurance assets in a receivership, see 916 S.E.2d at 666, there is no decision from a South Carolina appellate court applying that precedent to a judgment debtor's contingent insurance assets under a policy of automobile insurance.

achieve a federal hearing in a case otherwise not removable." Nautilus, 15 F.3d at 377 (cleaned up). The Mitchells claim that Motorists has engaged in procedural fencing by providing an "unconditional defense" to Rodriguez for years, only filing this suit after a verdict was rendered in the underlying action. ECF No. 13-4 at 7. However, as discussed above, South Carolina law recognizes that insurers have the right to contest coverage in declaratory action after a verdict is returned in the underlying tort action. Ex Parte Builders Mut. Ins. Co., 847 S.E.2d at 96. There is no indication from the record in this case that Motorists has filed this suit with any intention other than to settle the coverage questions arising from the Policy. As such, the court does not find that this suit is being used as a device for procedural fencing.

Because three of the four Nautilus factors favor abstention, the court finds that the coverage issues presented in this suit can be better settled in state court. See 15 F.3d at 377. Accordingly, the court will exercise its discretion to abstain from entertaining this suit. See Wilton, 515 U.S. at 282; Brillhart, 316 U.S. at 494–95.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the Mitchells' motion to dismiss without prejudice, ECF Nos. 13, 16. K. Mitchell's motion to dismiss, ECF No. 14, is **DEEMED MOOT**.

**AND IT IS SO ORDERED.**

14



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 30, 2026**
**Charleston, South Carolina**